IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NILE GARY, | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| MICHAEL J. ASTRUE[1], | : | |
| Commissioner of Social Security, | : | |
|     Defendant | : | NO. 12-5446 |

## REPORT AND RECOMMENDATION

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

This action was brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied the application of Nile Gary for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") and under Titles II and XVI, respectively, of the Social Security Act ("Act"). Presently before this court are plaintiff's request for review, defendant's response to request for review, and plaintiff's reply in support of request for review. For the reasons set forth below, this court recommends that plaintiff's request for review be GRANTED.

I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a forty-four (44) year old female born on September 4, 1969. (Tr. 31). Plaintiff completed the eleventh grade[2]. (Tr. 32). Plaintiff had past relevant work as a cleaner and psychiatric aide. (Tr. 51-52).

---

[1]Michael J. Astrue became Commissioner of Social Security on February 14, 2007. Pursuant to Fed. R. Civ. Pr. 25(d)(1), he is automatically substituted for Jo Anne B. Barnhart as defendant in this matter.

2 Plaintiff indicated on her disability report, that she completed the twelfth grade. (Tr. 190). However, plaintiff testified at the hearing that plaintiff dropped out of school after the eleventh grade, and did not receive a GED. (Tr. 32).

On June 23, 2010, plaintiff protectively filed applications for DIB and SSI. (Tr. 158, 162-170). Plaintiff's applications were initially denied by the Social Security Administration on September 8, 2010. (Tr. 98-107). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 110-111).

A hearing before ALJ Jennifer M. Lash took place on May 27, 2011. (Tr. 5-20). Plaintiff, represented by counsel, testified, along with a vocational expert ("VE"). (Tr. 5-20). In a decision date May 27, 2011, the ALJ found that plaintiff's severe impairments were: residuals of a left foot contusion with toe fractures, a sprain and strain of the ankle, tendonitis, a laterally deviated hallux, and an affective disorder. (Tr. 10). The ALJ further found that plaintiff had the residual functional capacity to perform sedentary work with: a sit/stand option every thirty minutes; the ability to lean on a table or put one hand on her cane during the "stand" portion of the sit/stand option; no pushing, pulling, or operation of foot controls with the left lower extremity; occasional climbing of ramps and stairs but never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling crouching, and crawling; avoidance of frequent exposure to extreme cold, humidity, vibration, and hazards including moving machinery and unprotected heights; and is also limited to unskilled work with no more than routine and repetitive tasks. (Tr. 13). The ALJ determined that plaintiff in unable to perform any past relevant work. (Tr. 18). However, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 19).

Plaintiff requested review before the Appeals Council. (Tr. 4). The Appeals Council upheld the ALJ's decision on August 2, 2012, permitting the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-3). Plaintiff subsequently appealed that denial to this court.

II.     LEGAL STANDARDS

The role of this court, on judicial review, is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552 (1988). "Substantial evidence" is not "a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion." Id. at 664-65. Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, 402 U.S. 401 (1971); Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). In determining whether substantial evidence exists, the reviewing court may not weigh the evidence or substitute its own conclusion for that of the ALJ. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). If the court determines the ALJ's factual findings are supported by substantial evidence, then the court must accept the findings as conclusive. Richardson, 402 U.S. at 390; Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984). It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. Richardson, 402 U.S. at 401. While the Third Circuit has made it clear that the ALJ must analyze all relevant evidence in the record and provide an explanation for disregarding evidence, this requirement does not mandate the ALJ "to use particular language or adhere to a particular format in conducting his analysis." Rather, it is meant "to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

To establish a disability under the Social Security Act, a claimant must

demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health and Human Services, 841 F.2d 57 (3d Cir. 1988), quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423(d)(1) (1982). The claimant satisfies his burden by showing an inability to return to his past relevant work. Doak v. Heckler, 790 F.2d at 28; Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979) (citing Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966)). Once this showing is made, the burden of proof shifts to the Commissioner to show that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the economy. 20 C.F.R. § 404.1520. See Rossi v. Califano, 602 F.2d at 57.

As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.     ADMINISTRATIVE LAW JUDGE'S DECISION

Using the above mentioned sequential evaluation process, the ALJ determined plaintiff has not been under a "disability," as defined in the Social Security Act, since February 13, 2007, the date the plaintiff's alleged onset of disability, through the date of the ALJ's decision. (Tr. 281).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful work activity since plaintiff's alleged onset date. (Tr. 10). At step two, the ALJ found that plaintiff's residuals of a left foot contusion with toe fractures, sprain and strain of the ankle, tendonitis, laterally deviated hallux[3], and affective disorder were "severe" impairments within the meaning of the Regulation. (Tr. 10).

The medical records show that plaintiff suffered an injury to her foot on May 20, 2007, causing a tuft fracture, which affected plaintiff's gait and resulted in a hallux rigidus[4] and hallux valgus[5] becoming symptomatic. (Tr. 269-335). Surgical intervention was recommended. (Tr. 395-408). The mental health records indicate that plaintiff began mental health treatment in January 2008, following the December 2007 murder of her son. (Tr. 415). Plaintiff treated for grief counseling at the JFK Community Mental Health Center through March 24, 2011. Plaintiff was diagnosed with major depressive disorder, single episode, severe. (Tr. 421-439). On April 29, 2011, plaintiff's counselor, Olivia Snyder, completed a medical source statement finding that plaintiff had moderate limitations in the ability to understand and remember short, simple instructions, carry out short, simple instructions, understand and remember detailed instructions,

---

3 Hallux- the great toe, or first digit of the foot; called also digitus primus (I) pedis. Dorland's Illustrated Medical Dictionary (29th ed.), at 783.
4 Hallux rigidus- painful flexion deformity of the great toe in which there is limitation of motion at the metatarsophalangeal joint. Dorland's Illustrated Medical Dictionary (29th ed.), at 783.
5 Hallux valgus- angulation of the great toe away from the midline of the body, or toward the other toes; the great toe may ride under or over the other toes. Dorland's Illustrated Medical Dictionary (29th ed.), at 783.

5

carry out detailed instructions, make judgments on simple work-related decisions, interact appropriately with supervisors and coworkers. (Tr. 417-418). Further, it was noted that plaintiff had marked limitations in the ability to interact appropriately with the public, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. (Tr. 417-418).

Continuing with the five step analysis, the ALJ moved onto step three. At step three, the ALJ found plaintiff does not have an impairment, or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 11).

At step four, the ALJ found that plaintiff has the residual functional capacity to perform sedentary work with: a sit/stand option every thirty minutes; the ability to lean on a table or put one hand on her cane during the "stand" portion of the sit/stand option; no pushing, pulling, or operation of foot controls with the left lower extremity; occasional climbing of ramps and stairs but never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling crouching, and crawling; avoidance of frequent exposure to extreme cold, humidity, vibration, and hazards including moving machinery and unprotected heights; and is also limited to unskilled work with no more than routine and repetitive tasks. (Tr. 13). The ALJ considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. 13). Further, the ALJ considered opinion evidence. (Tr. 13).

Finally, at step five the ALJ determined that plaintiff is unable to perform any past relevant work. (Tr. 18). However, the ALJ found that there are jobs that exist in significant

6

numbers in the national economy that plaintiff can perform. (Tr. 19). Thus, the ALJ determined that plaintiff has not been under a "disability," as defined in the Social Security Act, from May 27, 2007, through the date of the ALJ's decision. (Tr. 19).

IV.     PLAINTIFF'S CONTENTION

Substantial evidence does not support the ALJ's finding in that the ALJ failed to follow the requirements of Social Security Ruling 00-4p.

V.      DISCUSSION OF MERITS

The Commissioner's findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). The role of this court is to determine whether there is substantial evidence to support the Commissioner's decision. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294 (1993). In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. Richardson v. Perales, supra.

In the case at bar, the ALJ determined that medical evidence established that plaintiff's severe impairments were: residuals of a left foot contusion with toe fractures, a sprain and strain of the ankle, tendonitis, a laterally deviated hallux, and an affective disorder. (Tr. 10). The ALJ further found that plaintiff had the residual functional capacity to perform sedentary work with: a sit/stand option every thirty minutes; the ability to lean on a table or put one hand on her cane during the "stand" portion of the sit/stand option; no pushing, pulling, or operation of foot controls with the left lower extremity; occasional climbing of ramps and stairs but never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling crouching, and crawling; avoidance of frequent exposure to extreme cold, humidity, vibration, and hazards

7

including moving machinery and unprotected heights; and is also limited to unskilled work with no more than routine and repetitive tasks. (Tr. 13). The ALJ determined that while plaintiff is unable perform any past relevant work, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 19).

After review of the records, this court finds the ALJ's decision was supported by substantial evidence. As such, plaintiff's request for review should be DENIED.

A.  <u>Conflict Between Vocational Expert's Testimony and Information in the Dictionary of Occupational Titles</u>

Plaintiff argues that the ALJ failed to follow the requirements of SSR 00-4p because the ALJ did not ask the VE (vocational expert) about a conflict between the VE's testimony and information contained in the Dictionary of Occupational Titles ("DOT"). Plaintiff alleges that the ALJ erred by finding plaintiff able to perform work as a surveillance system monitor, telephone information clerk and charge account clerk because the ALJ failed to resolve the conflict between the DOT description of those jobs' reasoning levels and the restriction on plaintiff, given by the ALJ to the VE, of routine and repetitive tasks. Plaintiff explains that the ALJ's hypothetical to the VE placed a reasoning restriction on plaintiff of routine and repetitive. Plaintiff argues that according the DOT the jobs of surveillance system monitor, telephone information clerk and charge account clerk require greater reasoning skills then those imposed by the ALJ's limitation to the performance of routine and repetitive work. Plaintiff states that a limitation of routine and repetitive work requires level 1, or possibly level 2 reasoning skills. Plaintiff further argues that according to the DOT surveillance system monitor, telephone information clerk and charge account clerk require level 3 reasoning skills, which are defined as "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from

standardized situations." DOT §§ 211.462-010.

SSR 00–4p provides guidance to resolve conflicts between the DOT and occupational evidence provided by a VE. SSR 00–4p, at 1. The Administration explained that "[w]hen there is an apparent unresolved conflict between vocational expert or vocational specialist evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the vocational expert or vocational specialist evidence to support a determination or decision about whether the claimant is disabled." Id. at 2. The Third Circuit has interpreted SSR 00–4p to require that the ALJ question the VE on the record about the existence of any conflict, "elicit a reasonable explanation" where such a conflict appears, and explain in the decision "how the conflict was resolved." Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir.2002). The Third Circuit has further held that an ALJ's failure to comply with the requirements of SSR 00-04p may result in a remand of a claim by the district court. Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005). However, the Third Circuit instructed that remand is only appropriate where the VE's testimony is inconsistent with the DOT and there is no other substantial evidence in the record to support the ALJ's decision. Id.; see also McHerrin v. Astrue, 2010 WL 3516433, *5 (E.D. Pa. 2010).

The DOT lists all jobs available in the national economy and the skill requirements necessary to perform each job. SSR 00-4p, at 8. In particular, the Specific Vocational Preparation ("SVP") defines the skill level required for the job while the General Education Development ("GED"), which includes Reasoning Development, Mathematical Development, and Language Development, provides informal and formal educational requirements. DOT, App. C; see also McHerrin, 2010 WL 3516433, at *9 (discussing the relevant sources in assessing plaintiff's ability to perform past work in light of limitations). The

9

reasoning development requirement within the GED is at issue here. The SVP levels listed in the DOT also correspond with the Code of Federal Regulations' three categories of work – unskilled, semi-skilled, and skilled – however; the regulations do not specify reasoning requirements and do not correspond with the reasoning development levels in the DOT. McHerrin, 2010 WL 3516433, at *9. Therefore, we note that the reasoning development requirement is a factor to consider in addition to the classification of unskilled work.

In the DOT, a job with reasoning level of 3 requires skills to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C. In contrast, a job with a Reasoning Level of 1 requires skills to "[a]pply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, App. C.

In the case at bar, there is a conflict between the VE's testimony and the information contained in the DOT. The ALJ presented the VE with a hypothetical limiting plaintiff to jobs that involve only routine, repetitive tasks. Numerous cases within the Third Circuit have found a conflict between a limitation of simple, repetitive tasks and a VE's occupational testimony that a claimant can perform a job with a reasoning level of 3. See McHerrin, 2010 WL 3516433, at *5 (holding that the ALJ's limitation to jobs involving simple, repetitive tasks was inconsistent with the job of surveillance system monitor, suggested by VE, which required level three reasoning); Ellison v. Astrue, Civil Action No. 08-21-1, Doc.Nos. 14, 15 (E.D. Pa. May 5, 2009) (approving and adopting report and recommendation issued by Magistrate Judge finding that limitation to performing simple, routine tasks was inconsistent

10

with performing duties of job which required level three reasoning, and remanding the case); Santore v. Astrue, No. 09-01801,Docs. No. 16, 17 (E.D. Pa. March 17, 2010) (approving and adopting magistrate's report and recommendation finding that the job titles identified by the VE and adopted by the ALJ required reasoning abilities beyond those set out in plaintiff's RFC.)

Defendants argue that the Commissioner's policy and practice is to rely on specific vocational preparation ("SVP") skill levels and not the DOT reasoning levels. Thus, defendants claim that there was no conflict because the jobs identified by the VE were unskilled, and correlated to an SVP level of two, a skill level which plaintiff's RFC indicates she could perform. However, as the court explained in McHerrin, "a number of courts have found the DOT's reasoning levels are much more indicative of whether the claimant is capable of performing more than simple, repetitive tasks." McHerrin, 2010 WL 3516433, at *6. Defendants further argue that plaintiff's educational background and past relevant work were consistent with a reasoning level of 3, and thus there is substantial evidence to support the ALJ's finding. However, the problem with defendants' argument is the ALJ did not discuss this evidence in the opinion in order to resolve the conflict between the VE testimony and the DOT. Accordingly, we find the ALJ's decision lacked the substantial evidence necessary to support the finding that plaintiff could perform the jobs identified by the VE.

Here, ALJ Lash determined that plaintiff can perform jobs that involve routine, repetitive tasks. (Tr. 13). The ALJ accepted the testimony of the vocational expert that plaintiff can perform the representative occupations of surveillance system monitor, telephone information clerk and charge account clerk, all occupations requiring a reasoning level of 3 according to the DOT. The VE's testimony that plaintiff can perform the above representative occupations is inconsistent with the ALJ's determination that plaintiff be limited to routine,

11

repetitive tasks.  Because the ALJ did not inquire of the VE how plaintiff can perform either of these jobs, which have reasoning levels of 3, while the ALJ restricted plaintiff to simple, routine tasks, a conflict exists.  A remand is appropriate so that the ALJ can explain these inconsistencies.  Accordingly, this issue should also be remanded to the ALJ for further consideration of vocational expert testimony.

Therefore, this court makes the following:

## RECOMMENDATION

AND NOW, this 17th day of September, 2013, it is RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be GRANTED.

BY THE COURT:

/S LINDA K. CARACAPPA
LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE